# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-KA-01366-COA

**JOHN BLAND, JR.**                                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/1998 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT |
| FOR APPELLANTS: | D. KIRK THARP |
| FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED III |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | MURDER: SENTENCED TO SERVE A TERM OF LIFE IMPRISONMENT |
| DISPOSITION: | AFFIRMED - 4/18/2000 |
| MOTION FOR REHEARING FILED: | 4/28/2000 - DENIED WITH MODIFIED |
| | OPINION - AFFIRMED - 7/18/2000 |
| CERTIORARI FILED: | 8/9/2000; denied 11/22/2000 |
| MANDATE ISSUED: | 12/13/2000 |

### ON REHEARING

EN BANC.

McMILLIN, C.J., FOR THE COURT:

¶1. The motion for rehearing is denied. The motion for correction of opinion filed by the State is granted, and the original opinion issued by the Court is amended and reissued in the form that follows:

¶2. John Henry Bland, Jr. has appealed his conviction for murder in the shooting death of Mark Martin. He raises the following issues on appeal: (a) the trial court gave an incorrect instruction on aiding and abetting, the effect of which was to improperly lessen the State's burden of proof, (b) the trial court erred in giving an instruction that the jury could consider Bland's flight in the aftermath of the shooting as evidence of guilty knowledge, and (c) the State's evidence was insufficient as a matter of law to support a verdict of guilty. We find these issues to be without merit and affirm Bland's conviction.

### I.

## Facts

¶3. Evidence presented by the State indicated that the following events occurred in Yalobusha County that ultimately led to the shooting death of the victim, Mark Martin. Bland and a number of his friends were involved in a running dispute with Martin, the origins of which are not entirely clear. Witnesses for the State testified that animosity for Martin held by Bland and his associates had escalated to the extent that Bland and an associate had been heard to dispute over which one of them would be permitted to kill Martin.

¶4. On August 31, 1997 Bland and Martin became involved in a face-to-face difficulty at a night club. The dispute between Bland and Martin was temporarily abandoned and Martin proceeded to travel on foot to another night spot in the area. After he arrived outside the club, a vehicle containing several individuals approached Martin and Martin was gunned down by gunfire seen to come from the vehicle. Eyewitnesses were able to positively identify Bland as one of the vehicle's occupants at the time Martin was shot. The car then departed the scene and was not discovered by law enforcement officers until early the next day, when it was found outside a motel in Batesville. Officers observing the car saw Bland, his companions, and several females depart the motel and enter the vehicle. When officers attempted to stop the vehicle, the car fled the scene at a high rate of speed and the occupants were captured only after an extended chase. There was no contention, however, that Bland was the driver of the vehicle during this episode. After the chase, a motorist alerted officers that a handgun was in the roadway near where the car came to rest. Subsequent ballistics testing established that one of the bullets that inflicted Martin's fatal wounds had been fired from that same handgun.

¶5. On this evidence, the jury returned a verdict of guilty of murder against Bland and it is from that verdict and the resulting judgment of sentence that Bland has appealed to this Court.

## II.

### The First Issue: Aiding and Abetting Instruction

¶6. Because the State was unable to prove with any certainty exactly which occupant (or occupants) of the vehicle actually fired the shots that proved fatal to Martin, the prosecution proceeded on the theory that Bland, whether he was the actual shooter or not, was guilty as a principal because all those in the vehicle were acting in concert to purposely accomplish the shooting, thereby making Bland guilty as having aided and abetted in the homicide. *See, e.g., Vaughn v. State,* 712 So. 2d 721, 724 (Miss. 1998); *Harris v. State,* 527 So. 2d 647, 649 (Miss. 1988); *Stevenson v. State,* 738 So. 2d 1248 (¶13) (Miss. Ct. App. 1999). In order to convey that concept of the law to the jury, the State requested and the trial court granted an instruction on aiding and abetting. Bland argues before this Court that the instruction as given by the State impermissibly lowered the State's burden of proof to that of only showing that Bland committed one of the essential elements of the crime. Bland based his argument on the similarity of the State's aiding and abetting instruction given in his case with that given, and subsequently strongly criticized by the Mississippi Supreme Court, in the case of *Hornburger v. State,* 650 So. 2d 510 (Miss. 1995). The text of the instruction given in this case was as follows:

> The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime, or immediately connected with it or leading to its commission, is as much a principal as if he had, with his own hand, committed the whole offense.

Therefore, if you believe from the evidence, beyond a reasonable doubt, that John Henry Bland, Jr. was present at the time of the murder of Mark Martin, and consented to and encouraged the commission of that crime, and did knowingly, wilfully, unlawfully, and feloniously do any act which is an element of that crime, or immediately connected with that crime, or leading to its commission, then you shall find John Henry Bland, Jr. guilty of the crime of Murder.

¶7. For purposes of comparison, the text of the criticized instruction in *Hornburger* is quoted below:

The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; *and if you find from the evidence beyond a reasonable doubt that the defendant, Gregory Hornburger, a/k/a Greg Hornburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.*

*Hornburger,* 650 So. 2d at 514 (emphasis supplied).

¶8. The State correctly points out that Bland did not raise this specific objection to the instruction when jury instructions were being considered at trial and urges that the issue be barred procedurally under the rule announced in such cases as *Chase v. State*, 645 So. 2d 829, 852 (Miss. 1994) and *Goldman v. State*, 741 So. 2d 949, 955 (Miss. Ct. App. 1999). Despite this potentially applicable procedural bar to the issue, we find it appropriate to reach the issue on the merits in this case because, arguably at least, an instruction so fundamentally flawed as to permit conviction without a finding that the crime had even been consummated would so offend notions of due process and fundamental fairness in the criminal process as to warrant notice as plain error. *See e.g. Berry v. State*, 728 So. 2d 568 (¶ 6) (Miss. 1999).

¶9. The supreme court found fault with the instruction in *Hornburger* based on the highlighted language of the instruction to the effect that if the jury concluded that Hornburger committed only one element of the crime of burglary, the jury could find him guilty. In the later case of *Liggins v. State*, where the court considered an essentially identical instruction, the supreme court said this language would permit a jury to convict of a crime without finding necessarily that the defendant was present during the commission of the crime or even, for that matter, that the crime had actually been accomplished. *Liggins v. State,* 726 So. 2d 180 (¶15-16) (Miss. 1998).

¶10. Despite its substantial similarity to the condemned instructions in *Hornburger* and *Liggins*, we conclude that the instruction in the case now before us has been sufficiently altered to properly address those defects pointed out by the supreme court in *Hornburger* and *Liggins*. Particularly, we point out that the instruction in this case specifically requires the jury to find that Bland "was present at the time of the murder of Mark Martin." There is no parallel language requiring this finding in the *Hornburger/Liggins* instruction. Additionally, the instruction in this case requires the jury, in order to convict Bland as an aider and abettor, rather than as the unquestioned shooter, to find that Bland, while present, "consented to and encouraged the commission of that crime" in addition to having done any act connected to the crime. Again, the *Hornburger/Liggins* instruction has no similar required finding.

¶11. With these added requirements for factual findings that were omitted in the instructions given in

*Hornburger* and *Liggins*, the instruction in this case accurately defines the law of aiding and abetting and properly instructs the jury as to those necessary facts it must find to exist in order to convict the defendant under that theory of criminal culpability. Thus, we find this issue to be without merit.

## III.

## The Second Issue: The Flight Instruction

¶12. Bland urges this Court to conclude that the trial court committed reversible error when it gave an instruction permitting the jury to consider evidence of Bland's flight as indicating guilty knowledge on his part. Unexplained flight in the aftermath of the commission of a crime has been held to be probative of guilt in this State. *Warren v. State,* 709 So. 2d 415 (¶21-23) (Miss. 1998). In such circumstance, it is appropriate for the trial court to instruct the jury as to the propriety of considering such evidence in assessing guilt. *Williams v. State,* 667 So. 2d 15, 23 (Miss. 1996).

¶13. However, the Mississippi Supreme Court has emphasized that the flight must be unexplained and that once the defendant has offered an explanation for sudden flight, it is improper to give a flight instruction. *Banks v. State,* 631 So. 2d 748, 751 (Miss. 1994); *Pannell v. State,* 455 So. 2d 785, 789 (Miss. 1984). Later cases have held that the explanation offered must be plausible and that implausible or unlikely explanations will be treated as the equivalent of no explanation at all. *Reynolds v. State,* 658 So. 2d 852, 856 (Miss. 1995).

¶14. In this case, Bland points to evidence indicating that, both on the night of the crime and on the occasion of the high-speed chase the morning after, he was a passenger and not the driver of the vehicle that was the instrument of flight. He argues that, since he was not in control of the vehicle in either instance, it is illogical to suggest that his flight was an affirmative act on his part having any tendency to disclose his state of mind.

¶15. Had the facts of the case been limited to the morning-after chase, we conclude that Bland's argument might have had some merit since, insofar as the largely-uncontested facts indicate, the chase did not begin until after Bland was in the vehicle and not in position to control the vehicle's movement. Absent some evidence that he actively directed or encouraged the driver of the vehicle to persist in resisting law enforcement officers' attempts to halt the vehicle, any suggestion that Bland was voluntarily and purposefully fleeing from the officers would be based upon nothing more than speculation.

¶16. However, we note that there was evidence presented that, on the night of the crime, Bland and his associates departed the scene of the shooting immediately after it occurred. Additionally, there was testimony that, at some later point in the evening, the occupants stopped to permit Bland to make a telephone call. Further, it is uncontradicted that all the vehicle's occupants spent the night in a rented motel room in a city different from the one where the shooting occurred. There is no indication that Bland was compelled against his will to remain with the group, despite his apparent ability to depart both at the time the telephone call was made and at some point during the night after the vehicle's occupants had stopped at the motel for the evening. We conclude that this evidence was sufficient to permit the jury to conclude that Bland was voluntarily fleeing both the actual scene of the crime as well as the general vicinity in which the crime was committed. His explanation that the purpose of the telephone call was merely to confirm that no one had been injured in the shooting and that the out-of-town trip to spend the night in a motel was merely a social occasion is, in our view, sufficiently implausible within the meaning of *Reynolds* to permit a flight

instruction.

¶17. We decline, therefore, to find error in the trial court's decision to grant such an instruction.

**IV.**

**The Third Issue: An Attack on the Sufficiency of the Evidence**

¶18. Bland finally contends that the State's evidence was insufficient as a matter of law to support his conviction for murder. Bland raised the issue with the trial court by asking for a peremptory instruction of not guilty at the close of the evidence. The trial court denied the motion and Bland claims that as error before this Court.

¶19. In considering such a motion, the trial court is required to consider all of the evidence in the light most favorable to the State. *McClain v. State,* 625 So. 2d 774, 778 (Miss. 1993). The court is required to keep in mind that, as to issues on which the evidence is in conflict, the jury sits as finders of fact and the court must view the evidence as if the fact-finder resolved all such conflicts consistent with the State's theory of the case. *Holloman v. State,* 656 So. 2d 1134, 1142 (Miss. 1995). Only if, as to one or more of the essential elements of the crime, the trial court concludes that the State's evidence is so deficient that a reasonable juror could only find the defendant not guilty should the trial court grant a peremptory instruction of acquittal. *Id.* If the trial court denies relief and that denial is raised as error on appeal, the appellate court is required to review the evidence in the same light as the trial court and to engage in the same assumptions as to the jury's resolution of disputed factual issues. *Horton v. State,* 726 So. 2d 238 (¶15) (Miss. Ct. App. 1998). Only if this Court's independent review of the same evidence considered by the trial court convinces us that the trial court erred may we set aside the jury's verdict. *Id.*

¶20. Bland bases his argument on evidence he presented that indicated that an individual in the vehicle named Kwame Brengettcy, suddenly and without any advance warning to the other vehicle occupants, opened fire from the vehicle at the time Martin was fatally injured. He points further to testimony of defense witnesses that Bregenttcy was the only person to discharge a firearm and that Bland had no advance indication that he was going to do so. He urges that this evidence, uncontradicted by any evidence offered by the State as to what transpired in the vehicle on the night of Martin's death, exonerates him as the shooter and further destroys any claim by the State that Bland was aiding and abetting another other person in shooting Martin down as he walked along the roadway. Bland cites the case of *Weathersby v. State* for the proposition that the defendant's version of events, if reasonable and not affirmatively contradicted by competing evidence from the State, must be accepted by the jury as true. *Weathersby v. State,* 165 Miss. 207, 209, 147 So. 481, 482 (1933).

¶21. Contrary to Bland's assertion, the State presented substantial evidence that, if accepted as true by the jury, would render Bland's version of the facts implausible. Milton Kimball and James Lewis testified to having heard Bland and a companion discussing their intention to kill Martin and vying for the honor of being the actual assassin. There was further evidence that, in the time immediately proceeding Martin's shooting death, he and Bland had engaged in a heated argument. There was further testimony for the State by Kevin Horton and James Lewis that they saw two persons firing at Martin from the vehicle.

¶22. In those circumstances, we do not find Bland's contention that he was merely a surprised and innocent passenger in the vehicle when another occupant of the vehicle suddenly and without warning opened fire on

Martin to be the sort of plausible and uncontradicted version of events that the jury was required to accept under *Weathersby*. To the contrary, we think there was sufficient evidence, when viewed in the light most favorable to the State, to support the jury's conclusion that Bland, in the aftermath of a heated confrontation with Martin, cooperated with a number of his companions to enter a vehicle, drive to the location where Martin was walking as a pedestrian along the roadway, and purposely shoot him to death with multiple shots from one or more firearms. Assuming that the jury accepted that version of events, which we must assume to the be the case based on the jury's verdict, we find no justification to set aside the jury's determination that Bland was guilty of Martin's murder, whether as the actual shooter or as the aider and abettor of an accomplice who fired the fatal shots.

¶23. **THE JUDGMENT OF THE YALOBUSHA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YALOBUSHA COUNTY.**

**SOUTHWICK, P.J., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, J. MYERS, J., NOT PARTICIPATING.**

KING, P.J., DISSENTING:

¶24. I respectfully dissent from the majority opinion herein. I believe that the instruction was misleading, and could be understood by the jury as allowing a finding of guilt, without requiring proof of each and every element of the offense.

¶25. In reviewing this issue, the court must view carefully instruction 9[1] and instruction 10.[2]

¶26. Instruction 9 was a murder instruction which gave the elements of murder and clearly stated that all elements of the offense must be proven to find Bland guilty of murder.

¶27. Within this same instruction, the jury was given the alternative of finding Bland guilty as an accomplice, and referred to instruction 10, to find the conditions under which such guilt might be found. Nowhere was the jury instructed that it must find all of the elements of murder to convict Bland as an accomplice. When read together, instructions 9 and 10 appear to have suggested that the jury had another option upon which to find Bland guilty. An option independent of the instruction on murder. An option which did not require a finding of all the elements of the offense of murder.

¶28. It is this type of instruction held unacceptable by the Supreme Court in *Berry v. State*, 728 So. 2d 568,( ¶9) (1999) and *Lester v. State*, 744 So. 2d 757, (¶8) (1999).

¶29. Because, I believe the instruction was subject to confusion, and impacted a fundamental right, *Berry*, at 568 ( ¶6), I would reverse and remand.

**IRVING, J., JOINS THIS OPINION.**

1. Instruction 9 reads:

The Defendant, John Henry Bland, Jr., has been charged with the crime of murder. The court instructs

the Jury that murder is the killing of a human being with malice aforethought, not in necessary self-defense, without the authority of law, by any means or by any manner, when done with the premeditated and deliberate design to effect the death of the person killed. The court further instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that:

1. On or about September 1, 1997, John Henry Bland, Jr. killed Mark Martin, a human being;

2. without authority of law;

3. with the premeditated and deliberate design to effect the death of Mark Martin with malice aforethought, then you shall find John Henry Bland, Jr. guilty of murder.

OR, if you find from the evidence, beyond a reasonable doubt, that John Henry Bland, Jr. was an accomplice to the murder of Mark Martin as defined in Jury instruction 10, then you shall find John Henry Bland, Jr. guilty of murder.

If the State has failed to prove any one or more of these elements, beyond a reasonable doubt, then the jury shall find John Henry Bland, Jr., not guilty of murder.

2. Instruction 10 reads:

The court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime, or immediately connected with it or leading to its commission, is as much a principal as if he had, with his own hand, committed the whole offense.

Therefore, if you believe from the evidence, beyond a reasonable doubt, that John Henry Bland, Jr. was present at the time of the murder of Mark Martin, and consented to and encouraged the commission of that crime, and did knowingly, wilfully, and unlawfully, and feloniously do any act which is an element of the crime that crime, or immediately connected with that crime, or leading to its commission, then you shall find John Henry Bland, Jr. guilty of the crime of murder.